**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>                      Plaintiff,<br><br>v.<br><br>SUN PHARMACEUTICAL<br>INDUSTRIES, LIMITED, and SUN<br>PHARMACEUTICAL<br>INDUSTRIES, INC. and SUN<br>PHARMA GLOBAL, INC.,<br><br>                    Defendants. | Civil Action No. 1:08-cv-1629 LJM-DML |

**DEFENDANT SUN PHARMACEUTICAL INDUSTRIES, LIMITED'S**
**ANSWER AND COUNTERCLAIMS**

Defendant Sun Pharmaceutical Industries, Ltd.'s ("Sun, Ltd.") hereby responds in this Answer and Counterclaims to the allegations in the Complaint filed on December 4, 2008, by Plaintiff Eli Lilly and Company (hereinafter "Eli Lilly" or "Plaintiff") as set forth below in response to the numbered paragraphs of the Complaint:

**ANSWER**

**JURISDICTION AND PARTIES**

1.      Sun, Ltd. is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

2.      Sun, Ltd. admits it is a public limited liability company incorporated and existing under the laws of India and having a principal place of business located at Acme Plaza, Andheri-

Kurla Road, Andheri (East), Mumbai 400059, Maharashtra, India.  Sun, Ltd. admits that it is a generic pharmaceutical company that wholly-owns Sun Pharmaceutical Industries, Inc. ("Sun, Inc.").  Sun, Ltd. denies the remaining allegations of this paragraph.

3.      Sun, Ltd. admits that Sun Pharmaceutical Industries, Inc. ("Sun, Inc.") is a Michigan corporation and is a wholly-owned subsidiary of Sun, Ltd.  Sun, Ltd. further admits that Sun, Inc. conducts business in the State of New Jersey at its offices located at 270 Prospect Plains Road, Cranbury, New Jersey 08512.  Sun, Ltd. denies the remaining allegations of this paragraph.

4.      Sun, Ltd. admits that Sun Pharma Global, Inc. ("Sun Global")  is a corporation organized and existing under the laws of the British Virgin Islands and maintains a post office box at International Trust Building, P.O. Box No. 659, Road Town, Tortola, British Virgin Islands.  Sun, Ltd. further admits that Sun Global is a wholly-owned subsidiary of Sun, Ltd. and that Sun Global submitted ANDA No. 90-745 to the Food and Drug Administration ("FDA").  Sun, Ltd. denies the remaining allegations of this paragraph.

5.      For purposes of this litigation only, Sun, Ltd. submits to personal jurisdiction in this District.  Sun, Ltd. denies the remaining allegations of this paragraph.

6.      Sun, Ltd. admits that this purports to be a patent infringement action arising under the United States Patent Laws, Title 35 U.S.C. § 100 *et seq*. Sun, Ltd. admits that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), but denies that this Court has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202.  Sun, Ltd. admits that venue is proper pursuant to 28 U.S.C. § 1391, but denies that venue is proper pursuant to 28 U.S.C. § 1400(b).

## COUNT I FOR PATENT INFRINGEMENT

7.      Sun, Ltd. admits what appears to be a true and correct copy of U.S. Patent No. 5,023,269 ("the '269 patent"), entitled "3-Aryloxy-3-Substituted Propanamines," is attached to the Complaint as Exhibit A.  Sun, Ltd. admits what appears to be a true and correct copy of  a patent term extension is attached as Exhibit B. Sun, Ltd. is without knowledge or information as to the remaining allegations of this paragraph and, therefore, denies them.

8.      Sun, Ltd. admits that Eli Lilly is identified in the Approved Drug Products with Therapeutic Equivalence Evaluations ("the Orange Book") as the holder of NDA No. 21-427 for Cymbalta®.  Sun, Ltd. is without knowledge or information sufficient to form a belief as to the truth of the allegations of the remaining allegations of this paragraph, and, therefore, denies them.

9.      Sun, Ltd. is without knowledge or information as to the remaining allegations of this paragraph and, therefore, denies them.

10.      Sun, Ltd. denies the allegations of this paragraph to the extent that they relate to Sun, Inc., which had no part in the development, preparation or submission of ANDA No. 90-745. Sun, Ltd. admits the remaining allegations of this paragraph.

11.      Sun, Ltd. admits the allegations of this paragraph.

12.      Sun, Ltd. denies the allegations of this to the extent that they relate to Sun, Inc., which had no part in the development, preparation or submission of ANDA No. 90-745, or preparation or sending of the Notice Letter to Eli Lilly on November 14, 2008 by Sun Global. Sun, Ltd. admits that Eli Lilly received the Notice Letter on November 17, 2008.   Sun, Ltd. admits the remaining allegations of this paragraph.

13.      Sun, Ltd. denies the allegations of this paragraph because the '269 patent is invalid, unenforceable, and/or not infringed.

14.     Sun, Ltd. admits that ANDA No. 90-745 was submitted to the FDA by Sun Global seeking authorization to commercially manufacture, use, offer for sale, and sell a generic drug product which is the subject of ANDA No. 90-745, but denies the remaining allegations of this paragraph, including any allegations asserting Sun, Inc. as having any role in the development, preparation or submission of ANDA No. 90-745.

15.     Sun, Ltd. admits that it had actual knowledge of the existence of the '269 patent prior to the submission of ANDA No. 90-745, but denies the remaining allegations of this paragraph.

16.     Sun, Ltd. denies the allegations of this paragraph.

## COUNT II FOR DECLARATORY JUDGMENT

17.     Sun, Ltd. incorporates by reference, as though fully set forth, paragraphs 1 through 16 herein.

18.     Sun, Ltd. denies the allegations of this paragraph.

19.     Sun, Ltd. admits to the allegations of this paragraph, but denies the allegations to the extent that they relate to Sun, Inc., which had no part in the development, preparation or submission of ANDA No. 90-745.

20.     Sun, Ltd. denies the allegations of this paragraph because all indications claimed in the '269 patent differ from FDA-approved indications.

21.     Sun, Ltd. denies the allegations of this paragraph because all indications claimed in the '269 patent differ from FDA-approved indications..

22.     Sun, Ltd. is without information or knowledge at this stage of ANDA No. 90-745's application process to make such a determination and, therefore, denies the allegations of this paragraph.

23.     Sun, Ltd. denies the allegations of this paragraph.

24.     Sun, Ltd. denies the allegations of this paragraph.

25.     Sun, Ltd. denies the allegations of this paragraph.

26.     Sun, Ltd. denies the allegations of this paragraph.

## PRAYER FOR RELIEF

27.     The allegations contained in the Prayer for Relief do not require a response, but to the extent that the Prayer for Relief contains additional allegations, Sun, Ltd. denies them all and denies that Eli Lilly is entitled to any relief from Sun, Ltd. Wherefore, Sun, Ltd. demands Judgment dismissing Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

Sun, Ltd. reserves the right to include any additional defenses or counterclaims that discovery may reveal.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

28.     Eli Lilly's Complaint fails to state a claim upon which relief can be granted.

29.     Eli Lilly's allegations that Sun, Ltd. has committed willful infringement, either in its analysis of the '269 patent or through its arguments in its Paragraph IV certification and its Notice Letter, or for any other reason, fail to state a claim upon which relief can be granted.

30.     Eli Lilly's request for declaratory judgment of threatened patent infringement, and for relief based thereon, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to Join Necessary and/or Indispensable Parties)

31.     Eli Lilly's claims are barred because it has failed to join necessary and/or indispensible parties.

## THIRD AFFIRMATIVE DEFENSE
### (Noninfringement of the '269 Patent)

32.     Sun, Ltd. is not infringing, has not infringed, and will not infringe, directly or indirectly, any valid and enforceable claim of the '269 patent, either literally or under the doctrine of equivalents.

## FOURTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

33.     Any claim by Eli Lilly that the claims of the '269 patent cover and include the products or acts of Sun, Ltd. are barred by the doctrine of prosecution history estoppel or otherwise by virtue of admissions, amendments, arguments, representations and/or misrepresentations made to the United States Patent and Trademark Office during the prosecution of the application from which the '269 patent issued.

## FIFTH AFFIRMATIVE DEFENSE
### (Invalidity of the '269 Patent)

34.     The claims of the '269 patent are not valid under 35 U.S.C. §§ 101, *et seq.*, including §§102, 103, and/or 112.

## SIXTH AFFIRMATIVE DEFENSE
### (Unenforceability of the '269 Patent due to Inequitable Conduct)

35.     The '269 patent is unenforceable for inequitable conduct because Applicants withheld from the U.S. Patent Examiner, with intent to deceive, a highly material document that was cited during prosecution of a European family member application.

### Applicants' duty to the USPTO

36.     Applicants for a patent have a duty to disclose to the U.S. Patent and Trademark Office (USPTO) any information that is material to the patentability of any claim being prosecuted under 37 C.F.R. § 1.56, which states as follows:

> Each individual associated with the filing and prosecution of a
> patent application has a duty of candor and good faith in dealing
> with the Office, which includes a duty to disclose to the Office all
> information known to that individual to be material to patentability
> as defined in this section. The duty to disclose information exists
> with respect to each pending claim until the claim is cancelled or
> withdrawn from consideration, or the application becomes
> abandoned.

(37 C.F.R. § 1.56).

37.     Persons substantively involved in the preparation or prosecution of the application leading to the '269 patent-in-suit, and who are associated with the Inventor(s) of the '269 patent, with the assignee, or with anyone to whom there is an obligation to assign the application leading to the '269 patent-in-suit had a duty to prosecute the application with candor, good faith and honesty.

38.     The Inventors of the '269 patent-in-suit and their agents (hereinafter referred to as "Applicants") had a duty to prosecute the '269 patent application with candor, good faith and honesty.

39.     Persons substantively involved in the preparation or prosecution of the application leading to the '269 patent-in-suit, and who were associated with the Inventor(s) of the '269 patent, with the assignee, or with anyone to whom there was an obligation to assign the application leading to the '269 patent-in-suit had a duty to disclose material information during the prosecution of the '269 patent application.

40.     The Applicants of the '269 patent-in-suit, and their agents, had a duty to disclose material information relating to the patentability of the '269 patent-in-suit during the prosecution of the application that became the '269 patent.

41.     Applicants also had an affirmative obligation to inform the USPTO of any information of which Applicants were aware that was contrary to affirmative statements made to the USPTO during prosecution of the '269 patent-in-suit.

42.     Under 37 C.F.R. § 1.56(b), information is material to patentability when it is not cumulative to information already of record, or being made of record, in the application and/or it refutes or is inconsistent with a position an applicant takes in opposing a ground of unpatentability relied upon by the USPTO or asserting an argument of patentability.

43.     The violation of an applicant's duties and obligations to the USPTO, such as intentionally withholding material information from the USPTO, with intent to deceive, constitutes inequitable conduct.

44.     Applicants had a duty to disclose to the USPTO any information that is material to the patentability of any claim being prosecuted under 37 C.F.R. § 1.56.

45.     Persons substantively involved in the preparation or prosecution of the application leading to the '269 patent-in-suit, and who are associated with the Inventor(s) of the '269 patent, with the assignee, or with anyone to whom there is an obligation to assign the application leading to the '269 patent-in-suit had a duty to prosecute the application with candor, good faith and honesty.

46.     Applicants had a duty to prosecute the '269 patent application with candor, good faith and honesty.

47.     Persons substantively involved in the preparation or prosecution of the application leading to the '269 patent-in-suit and who were associated with the Inventor(s) of the '269 patent, with the assignee, or with anyone to whom there was an obligation to assign the

application leading to the '269 patent-in-suit had a duty to disclose material information during the prosecution of the '269 patent application.

48.     Applicants of the '269 patent-in-suit and their agents had a duty to disclose material information relating to the patentability of the '269 patent-in-suit during the prosecution of the application that became the '269 patent.

49.     Applicants also had an affirmative obligation to inform the USPTO of any information of which Applicants were aware that was contrary to affirmative statements made to the during prosecution of the patents-in-suit.

50.     Under 37 C.F.R. § 1.56(b), information is material to patentability when it is not cumulative to information already of record or being made of record in the application and/or it refutes or is inconsistent with a position an applicant takes in opposing an argument of unpatentability relied upon by the USPTO or asserting an argument of patentability.

51.     The violation of an applicant's duties and obligations to the USPTO, such as intentionally withholding material information from the USPTO, with intent to deceive, constitutes inequitable conduct.

<u>Prosecution of European Application No. 87311181.9</u>

52.     European Application No. 87311181.9 ("the European application") was filed December 18, 1987, and claims priority to U.S. Application No. 06/945,122 (the '122 application), to which the '269 patent claims priority.

53.     Compound claims 1-9 filed in the European application were:

1. A compound of the formula (I):

$$R^1 - \underset{\underset{Ar}{\overset{\mid}{O}}}{CH}CH_2 CH_2 NR^2 R^3 \qquad (I)$$

wherein:

$R^1$ is $C_5$-$C_7$ cycloalkyl, thienyl, halothienyl, ($C_1$-$C_4$ alkyl)thienyl, furanyl, pyridyl or thiazolyl;

Ar is  or

 ;

each of $R^2$ and $R^3$ independently is hydrogen or methyl;
each $R^4$ independently is halo, $C_1$-$C_4$ alkyl, $C_1$-$C_3$ alkoxy or trifluoromethyl;
each $R^5$ independently is halo, $C_1$—$C_4$ alkyl or trifluoromethyl;
m is 0, 1 or 2;
n is 0 or 1; or
a pharmaceutically acceptable acid addition salt thereof.

2.  A compound of Claim 1 wherein Ar is

 .

3.  A compound of Claim 1 or 2 wherein R' is thienyl.

4.  A compound of any one of Claims 1 to 3 wherein one of $R^2$ and $R^3$ is hydrogen and the other is methyl.

5.  N-Methyl-3- (l-naphthalenyloxy) -3- (2-thienyl )propanamine, or a pharmaceutically acceptable acid addition salt thereof.

6.  The compound of Claim 5 which is the (+)-stereoisomer.

7.  (+)-N-Methyl-3-(l-naphthalenyloxy)-3-(2-thienyl)propanamine maleate.

8.  A pharmaceutical formulation comprising a compound of formula (I) as claimed in any one of          Claims 1 to 7, or a pharmaceutically acceptable acid addition salt therof [sic] associated with one or more pharmaceutically acceptable carriers, diluents or excipients therefor.

9.  A compound of formula (I), or a pharmaceutically acceptable salt thereof, for use in inhibiting the uptake of serotonin and norepinephrine in mammals.

54.    The European Search Report in the European application dated May 11, 1988, cited U.S. Patent No. 4,018,895 ("the '895 patent") as having the phenyl group in position 3 of the propylamine replaced with a heteroaryl group, in particular a thienyl group.

55.    A Communication (analogous to a USPTO Office Action) with mailing a date of October 6, 1989, included the reference "A. Burger, Medicinal Chemistry, Part A, pages 72-80" (hereinafter referred to as "Burger" or "the Burger article").

56.    Burger is an article on "bioisosterism," which is a field relating to substitutabilty of functional groups in a biologically active molecule without changing the basic biological activity.  The Burger article indicates that a classic example of bioisosterism is the substitutability of phenyl and thienyl groups.

57.    This Communication, including the Burger article, was mailed to Kenneth George Tapping who was a European patent attorney for the patent department of Lilly Industries Limited, a wholly owned subsidiary of Plaintiff Eli Lilly and Company.

58.    The Communication indicated in paragraph 3 that the claimed subject matter was considered not to involve an inventive step (analogous to being obvious under 35 U.S.C. § 103).

59.    In particular, the Communication noted that the claimed subject matter basically differs from the closest specific compounds disclosed in the '895 patent by having the phenyl group in position 3 of the propylamine replaced with a heteroaryl group, in particular a thienyl group.

60.    Paragraph 3 of the Communication also indicated that, in view of the structural closeness of at least some of the compounds in the application to those in the '895 patent, there must be an expectation of the qualitative retention of the same pharmacological properties at

least to the same or somewhat lesser degree so that the serotonin and norepinephrine uptake inhibitory effect of the claimed compounds was foreseeable for the person skilled in the art.

61.     Of particular relevance, the Communication cites to the Burger article in paragraph 3, stating (underlining in original):

> In particular, the skilled practitioner could reasonably expect that the <u>isoteric</u> substitution of e.g. thienyl or pyridyl for phenyl would not affect the basic capabilities of the compounds because it is known that such bioisosters" retain in most cases their basic pharmacological properties (cf. in this respect: MEDICINAL CHEMISTRY, third EDITION, PART 1, EDITED BY A. BURGER, WILEY-INTERSCIENCE 1970, pages 72-80, Document D2 annexed to this communication).

62.     The following paragraph of the Communication, *i.e.*, paragraph 4 (citation omitted; underlining in original), stated:

> Unless evidence is given by a showing that the small structural modifications vis-à-vis the prior art are unexpectedly associated with a significant improvement in the property relevant to the solution of the stated problem, the presumption prevails that the claimed compounds represent only <u>predictable effects</u> and are therefore obvious within the meaning of Article 56 EPC.

> If the Applicants choose to give evidence by comparative tests, these must be carried out in respect of the closest state of the art, which means in other words that the compounds disclosed in the application and the substances taken from the state of the art for comparative purposes should possess maximum similarity with regard to structure and application.

63.     Still further, paragraph 5 of the Communication indicated that the objection to lack of inventive step applied to all of the claims because "[t]he latter claims are not allowable in the absence of a valid claim for the compounds of formula I since they have no inherent significance which would overcome the objection to the lack of inventive step."

64.     On January 31, 1990, Applicants responded to the lack of inventive step rejection.

65.     Applicants did not argue against the lack of inventive step of the bioisosteric substitution of thienyl for phenyl of the '895 patent, nor did they argue against the support for the lack of inventive step rejection presented in view of Burger.

66.     Applicants could not, and did not, argue that Burger does not render obvious the substitution of a phenyl group by a thienyl group.

67.     Instead, Applicants chose to present evidence in the form of comparative tests that "the 2-thienyl compound of the present invention was effective at a much lower dosage level than the prior art phenyl analogue."

68.     On information and belief, the EP Communication and the Burger article were sent to Eli Lilly, and were reviewed by one or more inventors named on the '269 patent.

69.     On information and belief, the comparative tests submitted in the EP application were prepared by, or under the supervision of, one or more of the inventors named on the '269 patent.

70.     In support of the assertion of effectiveness of the thienyl compound of the subject matter claimed in the European application, Applicants submitted "COMPARATIVE TEST RESULTS" which contained results of four tests in which a compound of Applicant's invention, identified as 227942, was compared to the corresponding phenyl compound as disclosed in the '895 patent.

71.     Following this response, the European application proceeded to grant.

Prosecution History of the '269 Patent

The '122 Application (abandoned), Grandparent to the '269 patent

72.     On December 22, 1986 Applicants filed U.S. Application No. 06/945,122 ("the '122 application"), which did not claim priority to any other U.S. or foreign patent application. The '122 application served as priority document for the European application.

73.     Following a series of rejections and responses as well as IDS submissions, the claims of the '122 application were finally rejected.

74.     The IDS submissions did not make of record the prior art Burger article.

75.     The '122 application was abandoned in favor of a file wrapper continuation application that was filed on January 12, 1990.

                 The '925 Application (the '388 Patent), Parent to the '269 Patent

76.     The new application, assigned Serial No. 07/462,925, included an IDS dated January 8, 1990.

77.     This IDS indicated that it was filed in order to make of record documents "brought to the Applicants' attention by virtue of Search Reports in corresponding foreign applications."

78.     This IDS also indicated that though "it appears that only two [of the cited references] are particularly related to cycloalkyl compounds as presently claimed, all references are submitted for the sake of completeness and for future reference."

79.     This IDS only made of record five patents: U.S. Patent No. 3,433,804; U.S. Patent No. 2,842,555; U.S. Patent No. 3,423,510; French Patent No. 2,482,956; and British Patent Specification 1,343,527.

80.     This IDS did not make the Burger article of record, even though the Burger article had been cited in the European application over three months earlier.

81.     A Notice of Allowability dated March 13, 1990, in response to the IDS, stated that all claims were allowable.  U.S. Patent No. 4,956,388 ("the '388 patent") issued on September 11, 1990.

### The '940 Application (the issued as '269 Patent)

82.     A divisional application of the '388 patent, Divisional Application No. 07/499,940 (which would eventually issue as the '269 patent), was filed March 27, 1990.

83.     A Preliminary Amendment deleted "$C_5$-$C_7$ cycloalkyl" from the definition of $R^1$ in claim 1.

84.     The claims of the '269 patent correspond to claims of the European application, with the exception that the '269 claims do not include the embodiment of the $C_5$-$C_7$ cycloalkyl.

85.     On October 22, 1990, Applicants submitted an exact copy of the IDS filed in the earlier '925 application, which also made reference to the IDS filed in the '122 application.

86.     This was the same  IDS that referred to the Search Report from the European application, but did not refer to references cited in the lack of invention rejection, *e.g.*, the Burger article.

87.     As with the '388 patent, Applicants failed to make the Burger article of record in the prosecution history of the '269 patent.

88.     An Office Action dated August 3, 1990, rejected the claims based upon Molloy *et al.*

89.     The Office Action did not indicate which Molloy *et al.* is used in the rejection. However, there are three Molloy *et al.* U.S. patents cited in the '269 patent, *i.e.*, U.S. Patent Nos. 4,018,895; 4,194,009; and 4,314,081.  Each of U.S. Patent Nos. 4,018,895 and 4,194,009 is a

divisional of Application Serial No. 432,379 that matured into U.S. Patent No. 4,314,081, and therefore each of these patents should have the same disclosure.

90.     The Office Action further pointed to Hayashi *et al.* U.S. Patent No. 4,857,543, for its disclosure of thienyl compounds to further illustrate the state of the art.

91.     In particular, all of the pending claims, *i.e.*, claims 1, 2 and 4-14 and 16-53, were rejected as being obvious over Molloy *et al.*, with the rejection contending that:

> Molloy et al. (col. 1, lines 26—50) teaches phenoxypropylamines (useful for inhibiting seratonin [sic] uptake) with an aryl group at the 3 position. As can be seen, the instantly claimed compounds are directed to essentially the same general class of compounds differing by the particular aryl group at the 3 position. The interchangeability of one well known aryl group e.g. phenyl for another aryl group e.g. thienyl, pyridyl etc. would be obvious to one of ordinary skill in the art. One would be so motivated to make the analogous pyridyl, thienyl derivatives etc. of Molloy et al. with the expectation of obtaining additional psychotropic agents.

92.     In response to the rejection, on August 22, 1990, Applicants argued that the Examiner's assertion that substitution of a phenyl group for a thienyl group was an unsupported assertion, and that the Examiner had not provided any pertinent reference supporting the assertion.

93.     In particular, Applicants contended that:

> The Examiner has failed to provide any evidence as to why one of ordinary skill in this art would be motivated to replace a phenyl group with an "aryl group" as urged by the Examiner.  Such an unsupported assertion clearly cannot serve as the proper basis of rejection under Section 103.

94.     Further, Applicants contended that:

> In this case, since the Examiner has provided absolutely no pertinent reference which would suggest to one of ordinary skill in the art to replace a phenyl group with some "aryl group", Applicants submit that the Examiner has failed to meet the burden of supporting the rejection under Section 103. In re Grabiak, 226 U.S.P.Q. 870 (Fed. Cir. 1985).

95.      Thereafter, Applicants antedated Hayashi *et al.*, and argued a lack of motivation for the skilled artisan to incorporate the substituents as found in the claims of '269 patent application.

96.      Following this submission, the application was allowed and U.S. Patent No. 5,023,269 issued on June 11, 1991.

Applicants' Intentional Lack of Candor In Failing To Submit Burger

97.      During the prosecution of the grandparent '122 application, Applicants prepared and submitted two sets of experimental data intended to show unexpected results.

98.      One set of results was submitted in each of the two Robertson Declarations.

99.      The Robertson Declarations, alleging unexpected results for the cycloalkyl embodiment were submitted by U.S. counsel and signed by one of the inventors, *i.e.*, David W. Robertson.

100.      The first time that Applicants cited to references "brought to the Applicants' attention by virtue of Search Reports in foreign counterparts" in the U.S. applications was in the IDS submitted with the '925 application (which matured into the '388 patent).

101.      This IDS was filed much later than the October 6, 1989 Communication in the European Application that referenced the Burger article and just prior to the January 31, 1990 response in the European Application.

102.      This IDS did <u>not</u> cite the Burger article, and noted that, "[a]lthough it appears that only two documents are particularly related to the cycloalkyl compounds as presently claimed, all references are submitted for the sake of completeness and for future reference."

103.      As discussed above, following the submission of this IDS, the cycloalkyl claims of the '925 application were once again allowed.

104.    The divisional '940 application, which matured into the '269 application was filed March 27, 1990, and included an amendment to delete the cycloalkyl embodiment, and included exact copies of the IDS filed in the previous '925 and '122 applications, *i.e.*, IDSs not submitting the Burger article.

105.    An updated IDS was not filed nor was any information filed at that time regarding the Burger article or at any other time during prosecution of the '269 patent or any U.S. family member thereof.

106.    An Office Action was mailed August 3, 1990 during the prosecution of the '269 patent, which mailing date is about ten months after the mailing of the Communication in the European application, and about six months following the filing of the response to the Communication.

107.    This Office Action, as discussed above, did not reference the Burger article.

108.    The rejection was based upon Molloy *et al.*, *i.e.*, the '895 patent.

109.    The Office Action further pointed to Hayashi *et al.* U.S. Patent No. 4,857,543, for its disclosure of thienyl compounds to further illustrate the state of the art.

110.    In particular, all of the pending claims, *i.e.*, claim 1, 2 and 4-53 [actually claims 1, 2, 4-14 and 16-53], were rejected as being obvious over Molloy *et al.*

111.    Applicants' response filed October 22, 1990, once again intentionally failed to bring the Burger article to the Examiner's attention.

112.    Instead, Applicants argued that the rejection was based upon an unsupported assertion, and that the Examiner has provided absolutely no pertinent reference.

113.    Thereafter, Applicants antedated Hayashi *et al.*, and argued a lack of motivation for the skilled artisan to incorporate the substituents as found in the claims invention.

114.    Robert A. Conrad and Bruce J. Barclay of Eli Lilly participated in the prosecution of the '940 application.  On information and belief, one or more named inventors of the '269 patent, including David W. Robertson, participated in the prosecution of the '940 application.

115.    On information and belief, Robert A. Conrad, Bruce J. Barclay, one or more named inventors of the '269 patent (including David W. Robertson), and/or other agents involved with prosecution of the '940 application, received a copy of the Burger article, or was informed about the Burger article, in connection with prosecution of the '940 application, one of its U.S. family members, or in connection with the European application.

116.    During prosecution of the '940 application, Applicants emphasized that the U.S. Examiner did not provide documentary support for the assertion that the phenyl and thienyl groups were substitutable, yet Applicants withheld from the Examiner the prior art Burger article that directly contradicted that very assertion.

117.    On information and belief, Applicants knew that arguments submitted during prosecution of the '940 application were inconsistent with, and contradictory to, the prior art Burger article.

118.    The Burger article is a highly material reference with respect to the '269 patent and the '940 application from which it issued.

119.    On information and belief, those involved in the prosecution of the '269 patent (including Robert A. Conrad, Bruce J. Barclay, David W. Robertson and/or one or more other named inventors of the '269 patent), withheld the Burger article from the Examiner of the '940 application with the intent to deceive the USPTO.

120.    Applicants exploited the Examiner's failure to independently locate the Burger article, misled the Examiner by stating that all documents from Search Reports in foreign

counterparts had been submitted, and intentionally failed to bring to the Examiner's attention the highly Burger article.

121.    As such, the '269 patent was procured with deceptive intent to mislead the USPTO and is, therefore, unenforceable.

## SEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

122.    Eli Lilly is barred from any recovery because of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE
### (Lack of Subject Matter Jurisdiction)

123.    The Court lacks subject matter jurisdiction over Eli Lilly's declaratory judgment claims.

## COUNTERCLAIMS

Counterclaimant Sun Pharmaceutical Industries, Ltd. ("Sun, Ltd."), by way of Counterclaim for Declaratory Judgment against Eli Lilly and Company ("Eli Lilly" or "Counterclaim Defendant"), alleges as follows:

### I.  THE PARTIES

1.    Counterclaimant Sun, Ltd. is a company incorporated and existing under the laws of the British Virgin Islands with its principal place of business in Tortola, British Virgin Islands.

2.    Upon information and belief, Counterclaim Defendant Eli Lilly is a corporation organized and existing under the laws of Indiana with its principal place of business in Indianapolis, Indiana.

### II.  THE PATENT-IN-SUIT

3.    The patent-in-suit is United States Patent No. 5,023,269 ("the '269 patent").  Sun Pharma Global, Inc. ("Sun Global") submitted Paragraph IV certifications pursuant to 21 U.S.C.

§355(j) with respect to the '269 patent and U.S. Patent No. 5,508,276 ("the '276 patent").  Eli

Lilly and Shionogi and Company, Ltd., the owners of the '276 patent, have provided Sun, Ltd.

with a covenant not-to-sue on the '276 patent.

### III.  JURISDICTION AND VENUE

4.      Sun, Ltd. brings this action for a declaratory judgment of patent non-infringement

against Eli Lilly.  This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§

2201 and 2202 and the Patent Laws of the United States of America, 35 U.S.C. §§ 101, *et seq.*

5.      Eli Lilly listed the '269 patent in the "Approved Drug Products with Therapeutic

Equivalence Evaluations" (the "Orange Book") for Cymbalta®.

6.      On November 14, 2008, Sun Global sent Eli Lilly a notice letter pursuant to 21

U.S.C. § 355 (j)(2)(B) ("Notice") indicating that Sun Global's ANDA No. 90-745 was filed, and

that the ANDA included Paragraph IV certifications for the '269 patent.  The Notice related,

*inter alia*, to non-infringement, invalidity, and unenforceability, and included an Offer of

Confidential Access to the ANDA pursuant to 21 U.S.C. § 355(j)(5)(C)(i)(III).

7.      Eli Lilly has filed a complaint against Sun, Ltd. asserting infringement of the '269

patent.  However, Eli Lilly did not file a complaint against Sun, Ltd. for infringement of the '276

patent within 45 days of November 17, 2008, *i.e.*, the alleged receipt date of the Notice, and has

since provided a covenant not-to-sue.

8.      A justiciable controversy exists for the '269 patent because Eli Lilly has asserted

patent infringement of the '269 patent in this District Court.

9.      Subject matter jurisdiction over the counterclaims is proper pursuant to 28 U.S.C.

§§ 1331, 1338(a), 2201 and 2202.

10.     Eli Lilly is subject to general personal jurisdiction in this judicial district. Moreover, Eli Lilly has purposefully availed itself of the privileges of this District through the filing of a complaint in this District alleging infringement of the '269 patent. Venue is proper in this District under 28 U.S.C. §§ 1391(c) or (d).

### FIRST COUNTERCLAIM
### DECLARATORY JUDGMENT OF NONINFRINGEMENT

11.     Sun, Ltd. incorporate by reference, as though fully set forth, paragraphs 1 through 123 of the Answer and paragraphs 1 through 10 of the Counterclaims herein.

12.     Sun, Ltd. has not, does not, and will not directly infringe, contributorily infringe or induce others to infringe any valid claim of the '269 patent, either literally or under the doctrine of equivalents. Accordingly, Sun, Ltd. is entitled to declaratory judgment of noninfringement of both the '269 patent.

### SECOND COUNTERCLAIM
### DECLARATORY JUDGMENT OF INVALIDITY

13.     Sun, Ltd. incorporates by reference, as though fully set forth, paragraphs 1 through 123 of the Answer and paragraphs 1 through 12 of the Counterclaims herein.

14.     No claim of the '269 patent found to be infringed would be valid under 35 U.S.C. §§ 101 *et seq.*, including §§ 102, 103, and/or 112.

### THIRD COUNTERCLAIM
### UNENFORCEABILITY OF THE '269 PATENT DUE TO INEQUITABLE CONDUCT

15.     Sun, Ltd. incorporates by reference, as though fully set forth, paragraphs 1 through 123 of the Answer and paragraphs 1 through 14 of the Counterclaims herein.

16.     The '269 patent is unenforceable due to the inequitable conduct which occurred before the USPTO during its procurement.

### FOURTH COUNTERCLAIM

## DELISTING OF THE '269 PATENT

17.     Sun, Ltd. incorporates by reference, as though fully set forth, paragraphs 1

through 123 of the Answer and paragraphs 1 through 16 of the Counterclaims herein.

18.     An unenforceable patent does not have claims that cover the recited subject

matter.

19.     The listing of the '269 patent in the Orange Book should be deleted under 21

U.S.C. § 355 (j)(5)(C)(ii).

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant seeks a declaratory judgment against Eli Lilly as

follows:

1.     Dismissing the Complaint for Patent Infringement of the '269 patent against Sun,

Ltd. in its entirety, with prejudice, and that Eli Lilly shall take nothing by the Complaint, and that

judgment be entered in favor of Sun, Ltd.;

2.     Declaring that Sun, Ltd. has not, does not, and will not infringe the '269 patent;

3.     Declaring that Sun, Ltd. has not, does not, and will not induce and/or engage in

contributory infringement of the '269 patent;

4.     Declaring the '269 patent unenforceable;

5.     Declaring the '269 patent is invalid;

6.     Ordering that Eli Lilly delete the listing of the '269 patent in the Orange Book;

7.     Declaring this case exceptional under 35 U.S.C. § 285;

8.     Awarding Sun, Ltd. its Costs and Attorneys fees; and

9.     Awarding Sun, Ltd. such other and further relief as the Court may deem just and

proper.

Respectfully submitted,


/s/ Richard N. Bell

Date:  February 9, 2009                         Richard N. Bell, #2669-49
                                                Kelley J. Johnson, #25647-49
                                                Cohen & Malad, LLP
                                                One Indiana Square
                                                Suite 1400
                                                Indianapolis, Indiana 46204
                                                (317) 636-6481
                                                (317) 636-2593 (fax)
                                                rbell@cohenandmalad.com
                                                kjohnson@cohenandmalad.com


                                                OF COUNSEL:
                                                GREENBLUM & BERNSTEIN, P.L.C.
                                                Neil F. Greenblum, Esq.
                                                Michael J. Fink, Esq.
                                                P. Branko Pejic, Esq.
                                                Paul A. Braier, Ph.D., Esq.
                                                1950 Roland Clarke Place
                                                Reston, VA 20191
                                                Telephone: (703) 716-1191

                                                *Attorneys for Defendants,*
                                                *Sun Pharm Global, Inc. and*
                                                *Sun Pharmaceutical Industries, Ltd.*


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2009, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Jan M. Carroll
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, IN  46204-3535
jan.carroll@btlaw.com


                                                /s/Richard N. Bell

                                                Richard N. Bell, #2669-49

COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Telephone (317) 636-6481
Fax (317) 636-2593
Email: rbell@cohenandmalad.com
        kjohnson@cohenandmalad.com